UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Lee D. Williams | ) | Case No. 4:06CV1808 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolves Docs. 64, 71, 76, 90, 91] |
| Dr. Ayham Haddad, | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendant. | ) | |

This matter is before the Court upon cross-motions for summary judgment filed by Plaintiff, Lee D. Williams, and Defendant, Dr. Ayham Haddad. In resolving these motions, the Court will also resolve numerous miscellaneous motions related to them. For the reasons stated herein, Haddad's motion for summary judgment is GRANTED, and Williams' motion for partial summary judgment is DENIED.

**I.      Procedural Background**

On July 27, 2006, Williams filed a complaint naming five different defendants. In the complaint, Williams alleged that the defendants were deliberately indifferent to his medical needs and had retaliated against his protected conduct. On October 27, 2006, this Court dismissed the complaint as it related to Tracy England, Dr. Reid, and Cheryl Martinez. Pursuant to a motion to dismiss filed by interested party Ohio Department of Rehabilitation and Correction, this Court dismissed the complaint against Alberta Williams on July 31, 2008. Accordingly, the sole remaining defendant in this matter is Haddad.

1

On April 30, 2009, Williams filed his motion for partial summary judgment.  On May 19, 2009, Haddad moved to exclude portions of Williams' evidence due to his failure to authenticate it.  On June 5, 2009, Haddad moved for summary judgment and filed his opposition to Williams' motion for partial summary judgment.  On June 19, 2009, Williams opposed Haddad's motion to exclude his evidence.  On July 22, 2009, Williams filed his opposition to Haddad's motion for summary judgment, moved to amend his complaint, and moved for leave to conduct further discovery.  On August 5, 2009, Haddad replied in support of his dispositive motion, opposed Williams' request for further discovery, and opposed Williams' motion for leave to amend the complaint.  The pending motions now appear before the Court.

## II.     Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The initial burden of proving the absence of any "genuine issues" is borne by the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.*  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determining whether a factual issue is "genuine" requires considering the applicable evidentiary burdens.  *Id.* at 252.  Moreover, when deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party.  *Matsushito Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party.  The non-moving party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  Moreover, Fed. R. Civ. P. 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must— by affidavits or as otherwise provided in this rule—set our specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Accordingly, summary judgment analysis examines whether a trial is necessary and judgment is therefore appropriate when there are no genuine issues of material fact.  *Anderson*, 477 U.S. at 250.

### III.  Legal Analysis

Initially, the Court notes that Williams is correct that his verified complaint may properly serve as evidence when considering the pending motions.  "Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed.R.Civ.P. 56(e), a verified complaint ... satisfies the burden of the nonmovant to respond."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).  "[A] verified complaint ... would have the same force and effect as an affidavit and would give rise to genuine issues of material fact."  *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  However, the Court notes that a "supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed.R.Civ.P. 56(e).

Finally, the Court notes that the simple act of Williams filing a verified complaint does not render all of his submitted evidence admissible.  Haddad is correct that the investigation

report submitted by Williams has not been authenticated in any manner. Furthermore, the investigation report is rife with hearsay. In his response to the motion in limine filed by Haddad, Williams did nothing to authenticate the report and failed to address any of its evidentiary deficiencies. The Court, however, had thoroughly reviewed the report. Removing the self-serving hearsay statements made by Williams, the report contains no information relevant to the pending claims. Accordingly, based upon the numerous deficiencies in the evidence, the Court GRANTS the motion in limine and has not considered the report in reaching its decision.

1. **Deliberate Indifference**

In his first count, Williams claims that Haddad was deliberately indifferent to his medical needs. The Eighth Amendment protects prison inmates against deliberate indifference to their serious medical needs, regardless of how that deliberate indifference is evidenced. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). The Sixth Circuit has repeatedly discussed the standard applied to claims such as that raised by Williams.

> In order to hold a prison official liable for an Eighth Amendment violation, a plaintiff must demonstrate that the official acted with deliberate indifference to the inmate's safety. Deliberate indifference is comprised of both an objective and a subjective component. The objective component requires that the deprivation alleged be sufficiently serious, while the subjective component requires a plaintiff to establish that the government officials had a sufficiently culpable state of mind.
>
> To establish the subjective component, the plaintiff must establish that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

4

*Cardinal v. Metrish*, 564 F.3d 794, 801-02 (2009) (citations, quotations, and alterations omitted). A review of the evidence herein demonstrates that Williams' claim does not approach the deliberate indifference standard.

First, it is doubtful that Williams' allegations demonstrate the "sufficiently serious" medical need required to fulfill the objective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (detailing the elements of a deliberate indifference claim). Assuming arguendo, however, that Williams' medical condition and ongoing pain qualifies as sufficiently serious, there is no question that he has failed to satisfy the subjective component of his claim. The subjective component requires that Williams demonstrate the prison staff's awareness of "facts from which the inference could be drawn that a substantial risk of serious harm exist[ed.]" *Id.* at 837. Williams can satisfy this burden through facts and inferences drawn from circumstantial evidence. *Id.* at 842. Furthermore, this Court can find subjective knowledge based on the obviousness of the risk. *Id.*

However, the Court notes that the subjective component of its analysis exists "to prevent the constitutionalization of medical malpractice claims[.]" *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Accordingly, negligence in diagnosing and treating a medical condition does not constitute unconstitutional deliberate indifference. *See Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995). Similarly, a prison doctor who provides careless or ineffective treatment may have engaged in medical malpractice, but cannot be found to be unconstitutionally deliberately indifferent. *Comstock*, 273 F.3d at 703. "If a prison official knew of a risk to inmate health or safety, and reasonably responded to the risk, that official is free from liability, even if he failed ultimately to prevent harm." *Bertl v. City of Westland*, 2009 WL 247907 at *5 (6th Cir. Feb. 2, 2009) (citing *Farmer*, 511 U.S. at 844).

5

In the instant matter, Williams claims that Haddad was deliberately indifferent when he denied Williams narcotics for his pain. There is no dispute that Haddad refused to prescribe Vicodin to Williams following March 4, 2005. Furthermore, the undisputed evidence indicates that Williams was found to be hoarding Vicodin in his cell on that date. On March 11, 2005, Haddad informed Williams that his Vicodin prescription was being discontinued due to his hoarding. According to an affidavit filed by Nurse Michelle Viets, Williams was prescribed approximately fifteen different medications, after his Vicodin was discontinued, in order to control his pain.

For example, on March 17, 2005, Williams returned indocin and parafon forte medications and requested Vicodin. On March 18, 2005, Williams was given naproxen for his pain. On March 24, 2005, Williams returned, asserting that the naproxen was not working and requested stronger medication. Throughout March, April, May, and June of 2005, Williams routinely complained of back pain, leg pain, and testicular pain. To treat his pain, he was given, among other medications, toradol and a medrol dose pack. During the above months, he was seen in nurse sick call on roughly fifteen occasions. He also received an EMG on April 26, 2005 and was diagnosed with lumbar degenerative disc disease. During that same time period, he was seen in doctor sick call on at least nine occasions. This pattern of visits extended for the duration of 2005. Williams would appear at sick call and complain of pain. At various times, he was given Tylenol with codeine, colace, naprosyn, toradol, naproxyn, and Percocet for his pain complaints.

Williams' complaint of deliberate indifference comes down to one fact: he was not given the narcotic pain medication, Vicodin, that he desired. There is no question that he was hoarding the Vicodin at the time its use was discontinued. Furthermore, there is no question that Williams

6

was routinely given alternative medication for his pain once it was found that he clearly did not need the Vicodin since he was able to hoard it. Williams' treatment does not give rise to a genuine issue of material fact with respect to deliberate indifference. From the evidence, the Court cannot say that Williams has even demonstrated an issue of fact to the lesser standard of medical malpractice. Nothing in the record supports a conclusion that Haddad was deliberately indifferent in the manner that he provided treatment. Accordingly, Haddad's motion is GRANTED with respect to the deliberate indifference claim.

### 2. Retaliation

Initially, the Court notes that it is difficult to determine the precise basis of Williams' retaliation claim. The Court, therefore, has liberally construed the complaint and will address multiple possible bases for the action.

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394. If Williams' meet his burden of demonstrating a genuine issue of fact on each of the three elements, summary judgment is still appropriate if Haddad can demonstrate that "he would have taken the same action in the absence of the protected activity[.]" *Id.* at 400.

Williams' claims he engaged in protected activity when he filed grievances against Dr. Haddad. Assuming arguendo that Williams' grievances were protected activity, it is difficult to ascertain what adverse action was taken against the plaintiff. As detailed above, Williams was routinely seen and prescribed pain medication long after he filed numerous grievances. Williams

7

appears to assert that on one occasion Haddad refused to give him an exam. On that date, March 11, 2005, Williams had not filed a grievance against Haddad. Instead, Williams filed a grievance based on the failure to exam on March 14, 2005. Accordingly, the later-filed grievance cannot be said to have caused the failed exam.

With respect to this aspect of his retaliation claim, Williams has offered no evidence of any causal connection between alleged adverse actions and his numerous grievances. For that matter, Williams has never made any argument about a specific grievance and a specific adverse action. Instead, Williams appears to simply argue that his grievances led to Haddad's deliberate indifference. As noted above, however, there is no evidence that Haddad was deliberately indifferent. Accordingly, this aspect of the retaliation claim fails.

Finally, Williams appears to allege that Haddad retaliated against him by using another inmate to threaten him. Williams has offered no admissible evidence in support of this claim. Instead, Williams has made conclusory assertions that he "believes" that Haddad used another inmate to threaten him. There is no testimony from the inmate that allegedly threatened Williams. Furthermore, Williams' claim is undermined by his own deposition. In his deposition, Williams indicated that Haddad told the other inmate "don't go there" when that inmate began to threaten Williams. As there is a complete lack of evidence that Haddad in any manner generated or supported the alleged threats, they cannot be attributed or imputed to Haddad. The second aspect of Williams' retaliation claim also fails.

**IV. Remaining Motions**

Williams has also filed a motion to amend his complaint and to re-open discovery. Haddad has opposed both motions. The motion to amend seeks to add the defendants that were previously dismissed in this suit. Williams' contends that he had found new evidence to support

adding these parties to the litigation again. The Court finds no merit in Williams' argument. The motion is DENIED.

Williams has also filed yet another request for additional discovery. The Court has on numerous occasions denied Williams' requests to re-open discovery. Each motion was filed long after discovery was closed. Like his last motion, this motion was filed after dispositive motions were filed. The Court provided ample time for discovery in this matter. The motion is DENIED.

### V. Conclusion

Based upon the reasons stated herein, Haddad's motion for summary judgment (Doc. 76) is GRANTED. For the same reason, Williams' partial motion for summary judgment (Doc. 64) is DENIED. Haddad's motion in limine (Doc. 71) is GRANTED, and Williams' motions to amend (Doc. 90) and reopen discovery (Doc. 91) are DENIED. The complaint is hereby DISMISSED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed.R.App.P. 22(b).

IT IS SO ORDERED.

 August 7, 2009  /s/ John R. Adams  
Date JOHN R. ADAMS  
UNITED STATES DISTRICT JUDGE